Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Eduardo Nonalsi Bravo | § § | |
| *Plaintiff,* | § § | Case No. 4:25-cv-1556 |
| v. | § § | |
| Bret Bradford, Houston Field Office Director, U.S. ICE Enforcement and Removal Operations, ICE Officer Chris Sandoval, John Doe ICE Agents #1-3. | § § § § § § § | Date: April 4, 2025 |
| *Defendants.* | § | |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Plaintiff, Eduardo Nonalsi Bravo (hereinafter "Plaintiff" or "Mr. Bravo"), brings this action pursuant to authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for their violation of his rights protected under the Fourth, and Fifth Amendments to the United States Constitution.

Plaintiff brings this action against Defendants because he was unlawfully detained by Defendants, based on the groundless and erroneous belief that he might be an undocumented and deportable "alien."

Accordingly, Plaintiff seeks declaratory relief and injunctive relief as well as compensatory and punitive damages against Defendants, to redress the deprivation of Plaintiff's rights arising under the laws and Constitution of the United States.

## I. INTRODUCTION

1. This case concerns a fundamental right guaranteed to every person in the United States—the freedom from unreasonable searches and seizures, arbitrary arrest and detention devoid of probable cause, and the freedom from deprivation of liberty without due process of law.

2. Defendants deprived Mr. Bravo of his liberty based on an unfounded and erroneous assumption that he was an alien with an outstanding removal order.

3. In doing so, Defendants showed callous, willful, and reckless indifference to Mr. Bravo's rights, and violated their own policies by arresting and detaining

Mr. Bravo.

4. Plaintiff became a Legal Permanent Resident ("LPR") of the United States of America on July 1, 2009. He was subsequently issued a noticed to appear ("NTA") on November 25, 2019, and as a result, placed in removal proceedings when said NTA was filed with the Conroe Immigration Court.

5. However, on April 9, 2021, the Board of Immigration Appeals ("BIA" or "Board") terminated Plaintiff's removal proceedings.

6. As a result, Plaintiff retained his Legal Permanent Resident status and continues to hold it to date.

7. Nevertheless, on or about February 5, 2025, Plaintiff was arrested by Defendants on the groundless belief that he might be an undocumented and deportable alien.

8. Despite ample opportunities and resources, Defendants failed to take the required steps to verify Mr. Bravo's immigration status, resulting in his wrongful arrest and detention.

9. As such, Plaintiff seeks declaratory relief and injunctive relief as well as compensatory and punitive damages against Defendants, to redress the deprivation of Plaintiff's rights arising under the laws and Constitution of the United States

## II. JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, because this is a civil action arising under the Constitution and laws of the United States.

11. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (e), because a substantial part of the events giving rise to the claim occurred in Houston, Texas and because Plaintiff, Mr. Bravo resides in Houston, Texas, which is in the Southern District of Texas.

## III. PARTIES

12. Plaintiff, Eduardo Nonalsi Bravo (A# 088-809-296) is a citizen of Mexico and a Legal Permanent Resident of the United States, who resides at: 2906 Misty Park Dr, Houston, Texas 77082.

13. Defendant, Bret Bradford, is the Houston Field Office Director of the U.S. ICE Enforcement and Removal Operations ("ERO"). He is responsible for the operation of ERO in Houston Texas, including the apprehension, detention, and removal of foreign nationals charged with violation of Immigration law, and the supervision of sworn law enforcement officers assigned to the ERO in Houston, Texas.

14. Upon information and belief, Defendant Bradford was personally involved in and/or personally ordered or authorized the conduct of the ICE

agents/officer(s) complaining of herein. At the minimum, Defendant Bradford was grossly negligent in managing the training and activities of the ICE agents under his supervision. Defendant Bradford is sued individually. He may be served at: 126 Northpoint Drive Houston, TX 77060.

15. Defendant, ICE Officer Chris Sandoval is sued individually.

16. Defendants, John Doe ICE Agents #1-3 are sued individually.

17. The true name of Defendants John Doe ICE Agents #1-3 are unknown to Plaintiff, and therefore Plaintiff sues these Defendants by such fictitious names.

18. Upon information and belief, each Defendant is responsible for the injuries suffered by Plaintiff as a result of the acts alleged in this complaint.

19. Plaintiff will amend his complaint to state the true names of Defendants John Doe ICE Agents #1-3 after those names have been identified.

20. In committing the acts alleged in this complaint, Defendant Chris Sandoval, and Defendants John Doe ICE Agents #1-3, were acting on behalf of the ICE ERO.

21. Further, upon information and belief, Defendant Chris Sandoval, and Defendants John Doe ICE Agents #1-3, were acting under the immediate supervision of Defendant Bradford.

22. Defendant Bradford, Defendant Chris Sandoval, and Defendants John Doe

ICE Agents #1-3 knew or should have known that committing the acts alleged in this complaint violated Plaintiff's clearly established constitutional rights.

## IV. LEGAL AND PROCEDURAL BACKGROUND

23. In *Bivens*, the Supreme Court held that where a federal officer "acting under color of [federal] authority" commits a constitutional tort, a cause of action for money damages arises directly under the Constitution. *Bivens*, 403 U.S. at 389.

24. The Supreme Court further found that *Bivens* does have a cause of action for damages arising from the federal agents Fourth Amendment violations. *Id.*

25. The Supreme Court in *Davis v. Passman*, 442 U. S. 228 (1979), subsequently held that such a cause of action and damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated.

26. ICE, a component of the Department of Homeland Security ("DHS"), was established following the creation of DHS in 2003. The agency's stated mission is "to protect America from the cross-border crime and illegal immigration that threaten national security and public safety."

27. ICE is primarily responsible for immigration enforcement in the interior of the United States. ICE has authority to arrest and detain non-U.S. nationals ("aliens," as the term is used in federal law) identified for removal because of

immigration violations.

28. ICE officers' authority to arrest aliens believed to have committed immigration violations, derives primarily from two federal statutes: 8 U.S.C. §§ 1226 and 1357 (Sections 236 and 287 of the Immigration and Nationality Act ("INA")).

29. 8 U.S.C. § 1226(c)(1)(B) authorizes the detention of any alien who is deportable by reason of having committed any offense covered in 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii), (B), (C), or (D).

30. 8 U.S.C. § 1226(d) further states that the attorney general shall devise and implement a system:

> (A) to make available, daily (on a 24-hour basis), to Federal, State, and local authorities, investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;
>
> (B) to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and
>
> (C) which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony and indicates

those who have been removed.

31. 8 U.S.C. § 1357(a)(2) authorizes ICE to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the U.S. in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest. *See also* 8 C.F.R. §§ 287.5(c)(1); 287.8(a)(1)(iv).

32. 8 C.F.R. § 287.8(c)(2) states that an arrest shall be made only when the designated immigration officer has "reason to believe" that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States.

33. However, there are constitutional restrictions on this arrest authority.

34. The Fourth Amendment of the United States Constitution protects people from unreasonable searches and seizures by the government.

35. The Fifth Amendment of the Constitution states that no person shall be deprived of life, liberty, or property, without due process of law.

V. FACTUAL ALLEGATIONS

36. Plaintiff Eduardo Nonalsi Bravo is 41 years old. He became an LPR of the United States of America on July 1, 2009. He is married to United States citizen and together, they have two U.S. citizen children.

37. Plaintiff was subsequently issued an NTA on November 25, 2019, on the basis that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), for having

been convicted of two or more crimes involving moral turpitude.

38. He was placed in removal proceedings when said NTA was filed with the Conroe Immigration Court.

39. However, on February 24, 2020, the Immigration Court terminated Plaintiff's proceedings after finding that in light of Fifth Circuit's precedent – specifically, *Monteon-Camargo v. Barr*, 918 F.3d 423 (5th Cir. 2019) – Plaintiff's offenses were not crimes involving moral turpitude since they were committed before the Board of Immigration Appeals' ("BIA" or "the Board") decision in *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847, 848 (BIA 2016).

40. As a result, the Court found that Plaintiff was not removable as charged in his NTA and his removal proceedings were terminated.

41. Thereafter, the DHS filed an appeal of the Immigrations Court's decision to the Board, and on June 25, 2020, the BIA vacated the Immigration Court's decision, reinstated proceedings, and found that the charge of removability was sustained.

42. Subsequently, Plaintiff timely filed a motion to reconsider the BIA's decision and on April 9, 2021, the Board granted Plaintiff's motion.

43. Critically, in the April 9, 2021 order, the BIA clearly stated that its June 25, 2020, decision was erroneous and vacated said decision. The Board then affirmed the Immigration Judge's decision, terminating removal proceedings.

44. As a result, Plaintiff's removal proceedings were properly terminated by the Board on April 9, 2021, and neither Plaintiff nor the DHS filed any further appeal or petition for review.

45. As such, Plaintiff retained his LPR status and remains in said status to date.

46. However, on or about February 5, 2025 – more than three years after his removal proceedings were terminated – Plaintiff, an LPR, was arrested and detained by ICE agents.

47. On that day, Plaintiff returned home after picking his minor U.S. citizen child from her elementary school. On getting home, he noticed vehicles around his home but paid no attention to it.

48. At about 5:45 p.m., Plaintiff's friend visited him with his own minor daughter. Plaintiff got into his friend's vehicle where his friend's minor daughter was seated in the back seat. Plaintiff was to accompany them to a nearby store.

49. As they approached an intersection, their vehicle was surrounded by four vehicles on the left, right, front and back. From these four vehicles emerged officers with guns pointed at Plaintiff.

50. Defendant ICE Officer Chris Sandoval – was wearing a vest labelled "ICE."

51. ICE Officer Sandoval emerged from his vehicle, opened Plaintiff's door while also pointing a gun at him, and pulled him out of the vehicle. Plaintiff repeatedly told these officers that they were making a mistake.

52. Officer Sandoval then searched Plaintiff, took his cellphone and handcuffed him.

53. Plaintiff's friend – a U.S. citizen – started recording the incident with his cellphone, but one of the ICE Agents (John Doe ICE Agent #1, 2, or 3) seized his cellphone and told him he was not allowed to record.

54. Plaintiff's friend's minor daughter remained in the back seat of their vehicle and recorded the incident.

55. Plaintiff was put in a truck by these ICE Agents and taken away.

56. In the vehicle and *en route* to an unknown location, one of the ICE Agents (John Doe ICE Agent #1, 2, or 3), told Plaintiff that he had a pending immigration case.

57. Plaintiff explained that his removal proceedings had been terminated and that he was an LPR.

58. Plaintiff informed the John Doe ICE Agent that he had documents in his home to show that his case was terminated but the ICE agent told him to calm down.

59. Plaintiff then requested the opportunity to contact his attorney but was ignored several times.

60. After several requests, the John Doe ICE Agent pulled over and made a phone call, asking someone on the other end to confirm what Plaintiff had said.

61. Plaintiff remained in the John Doe ICE Agent's vehicle in handcuffs while

the agent made the call in an attempt to verify Plaintiff's immigration status.

62. Thereafter, Plaintiff again requested to speak with his attorney and his attorney's office was called.

63. Plaintiff's attorney spoke with ICE Officer Chris Sandoval and thereafter sent a copy of Plaintiff's LPR card to Officer Sandoval.

64. However, officer Sandoval stated that he needed to see an order from a Court in order to release Plaintiff.

65. Notably, the status of Plaintiff's terminated removal proceedings was (and is) easily verifiable at the Executive Office for Immigration Review ("EOIR") automated case information system online.

66. Specifically, Defendants could have easily verified the status/termination of Plaintiff's removal proceedings by dialing the EOIR case information phone number – 800-898-7180, or entering Plaintiff's alien number into the automated system at https://acis.eoir.justice.gov/en/

67. Unfortunately, Defendants failed to verify the status of Plaintiff's removal proceedings but rather arrested and detained him without probable cause.

68. During this incident, Plaintiff was nervous and distraught that he might be wrongfully imprisoned and deported.

69. Eventually, Plaintiff's counsel was able to retrieve Plaintiff's physical file and search for a copy of the BIA's April 9, 2021 order terminating Plaintiff's

removal proceedings. Plaintiff's counsel then sent a copy of said order to ICE Officer Sandoval.

70. However, even after verifying his Legal Permanent Resident status as well as the fact that his removal proceedings had been terminated more than three (3) years prior, Defendants refused to release Plaintiff or take the handcuff off Plaintiff, rather Defendants kept him bound in their vehicle.

71. Plaintiff requested to be allowed to leave the vehicle at the location where the Defendants had pulled over, but they refused to allow him to leave. Rather, Defendants insisted on returning Plaintiff to his home.

72. Defendants then asked Plaintiff if they could make another arrest with him in the vehicle before taking him home and Plaintiff told them he did not want to be involved in that but simply wanted to be allowed to leave the Defendant's vehicle, but his request was again denied by Defendant.

73. Defendants kept Plaintiff bound in handcuffs and took him back to his home, where they also returned his cellphone to him.

74. On Plaintiff's cellphone were several missed calls and messages from his U.S. citizen spouse who had been informed of Plaintiff's arrest by ICE. She had contacted him several times but was unable to reach him because his phone was confiscated by ICE.

75. Plaintiff's U.S. citizen spouse suffers from lupus and during the period

Plaintiff was wrongfully detained by ICE, his spouse suffered from severe anxiety and panic attacks, such that she had to seek medical help after Plaintiff's return home.

76. Plaintiff's minor U.S. citizen child was with her mother (Plaintiff's spouse) even as she suffered those panic attacks and she had to witness her mother in such a vulnerable state at such a tender age.

77. Additionally, during this incident, Plaintiff contemplated the thought of being permanently separated from his family and deported.

78. Plaintiff felt a complete loss of control over his life and events that were unfolding. He was angry, hurt, humiliated, and wondered how he could end up at risk of being deported though he was an LPR. He feared the loss of his life in the United States, felt embarrassed, and disrespected.

79. The cumulative impact of being wrongfully arrested and detained by ICE, has been profound and has continued long after Plaintiff's release.

80. Plaintiff continues to have flashbacks to the incident, continues to live in fear of what would happen to his family, if he is suddenly arrested and deported by ICE without cause.

81. Plaintiff now fears returning home at the end of the day, believing that ICE officers may be waiting for him again. Plaintiff now lives life looking over his shoulder due to fear caused by his ordeal with ICE.

82. Plaintiff initially believed this fear would dissipate after some time, but after more than a month, he continues to battle with this mental torture, which affects his mental health, his family life and his professional life. As a result, he is in the process of seeking medical help from a professional mental healthcare provider.

83. As stated earlier, Plaintiff was arrested by Defendants on the groundless belief that he might be an undocumented and deportable alien.

84. Despite ample opportunities, Defendants failed to take the required steps to verify Mr. Bravo's immigration status before carrying out the unlawful arrest and detention; as well as still kept him detained even after learning that he was an LPR.

## VI. CLAIMS FOR RELIEF
### Bivens Action
### U.S. Const. amend. IV-V

85. Plaintiff incorporates by reference the allegations in paragraphs 1-84.

86. In committing the acts complained about herein, Defendants deprived Plaintiff of his constitutionally protected rights, including but not limited to:

    a. The right to be secure against unreasonable searches and seizures; and

    b. The right to be free from deprivation of liberty without due process

87. Defendants intentionally caused Mr. Bravo to be detained without probable cause.

88. Therefore, Defendants violated Mr. Bravo's exercise or enjoyment of his right to be secure against unreasonable searches and seizures, as secured by Fourth Amendment to the U.S. Constitution.

89. Defendants also violated Mr. Bravo's Fifth Amendment rights under the U.S. Constitution, by depriving him of liberty without due process.

90. Because these Defendants acted in clear violation of well-settled law, of which a reasonable person should have been aware, regarding searches, seizure, and detention, they are not entitled to a good faith defense or official immunity defense.

91. The actions of these Defendants were intentional, reckless, and showed a disregard for or indifference to the Plaintiff's constitutional rights.

92. As a direct and proximate result of Defendants' acts as set forth above, Mr. Bravo sustained injuries and damages.

93. The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents, Fed*, 403 U.S. 388 (1971).

94. As a direct or proximate result of the unlawful actions of these Defendants, Plaintiff has suffered harm, in the form of *inter alia*, trauma, worry, anxiety, humiliation, and mental torture, all of which have severely impacted his family life, professional life, and general well-being.

## VII.   PRAYER FOR RELIEF

95. Wherefore, Plaintiff respectfully requests that this Court:

   a. accept jurisdiction and venue as proper;

   b. issue a declaratory judgment on behalf of Plaintiff declaring that the actions of Defendants as complained of herein, violated the Fourth Amendment to the United States Constitution.

   c. issue a declaratory judgment on behalf of Plaintiff declaring that the actions of Defendants as complained of herein, violated the Fifth Amendment to the United States Constitution.

   d. issue an order permanently enjoining Defendants, and all others acting in concert with them from engaging in the unlawful and abusive actions set forth above.

   e. Award Plaintiff actual, compensatory and punitive damages for the violation of his Fourth and Fifth Amendment rights

   f. grant Plaintiff reasonable attorney's fees, expenses, and costs of court.

   g. grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

_____
Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Phone: (713) 481-3040,
Fax:   (713)588-8683
rgonzalez@gonzalezolivierillc.com